UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEYED H. H.[1], | |
| Petitioner, | No. 1:26-cv-00256-TLN-CKD |
| v. | **ORDER** |
| TONYA ANDREWS, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Seyed H. H.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) On January 27, 2026, the Court held a hearing on the motion. (ECF No. 26.) During the hearing the parties stipulated to converting the motion for TRO into a motion for preliminary injunction. (*Id*.) For the reasons set forth below, the Court issues a preliminary injunction ORDERING Petitioner's IMMEDIATE RELEASE and ORDERING Respondents to show cause why the Court should not grant the Petition for Writ of Habeas Corpus (ECF No. 1).

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[2]

On March 23, 2025, U.S. Immigration and Customs Enforcement ("ICE") appeared at Petitioner's home dressed in full tactical gear. (ECF No. 1-2 at 19.) Petitioner had not been charged with any crime, nor was he suspected of any crime in the United States. (ECF No. 1-2 at 21.) There were no immigration removal proceedings pending against Petitioner. (*See id.* at 2–5.) Petitioner was not home when ICE arrived, but when his roommate called him to return, Petitioner immediately complied. (*Id*. at 20.) Upon his return, he was told he was "under arrest for an immigration violation." (*Id.*) Petitioner was handcuffed, transported in a caged vehicle, and then placed in full restraints, before being transported to the Golden State Annex detention facility. (*Id.*; ECF No. 2 at 9.)

The day after Petitioner's arrest, Respondents served him with a Notice to Appear charging him with inadmissibility. (ECF No. 1-2 at 2-5.) On March 25, 2025, Respondents instituted removal proceedings.

Petitioner has now been detained for ten months. (ECF No. 2 at 9.) During that time, Petitioner has never been afforded an opportunity to be heard. (*Id.*) On December 23, 2025, an immigration judge denied Petitioner's request for a bond hearing for lack of jurisdiction. (ECF No. 1-2 at 78–79.)

Petitioner is a 49-year-old citizen of Afghanistan and an asylum applicant in the United States. (*Id.* at 8.) As the result of his work with the United States and Afghanistan governments, Petitioner was forced to flee Afghanistan in 2021, in fear for his life. (*Id.*; ECF No. 1-2 at 9.) Petitioner entered the United States on September 8, 2021, as a parolee of the Operation Allies Welcome ("OAW") program. (ECF No. 1-2 at 19.) Under OAW, the United States government aimed to safely resettle individuals from Afghanistan who worked alongside the United States during the Afghanistan war. Petitioner asserts that persons paroled from Afghanistan are required to pass background and medical checks, along with biometric security screenings. As part of his resettlement, Petitioner applied for a Special Immigrant Visa ("SIV")[3] due to his work with the

---

[2]   Unless otherwise stated, the facts in this case are undisputed.

[3]   Petitioner's SIV was ultimately denied for lack of documentation; he notified the agency

2

U.S. military. (ECF No. 2 at 8.) He later applied for asylum, which is still pending. (*Id.*)

During Petitioner's four years in the United States, he built a life in California. (*Id.*) He obtained work authorization and found gainful employment where he was a "valued member" of his team. (*Id.*) He paid taxes. (*Id.*) He found safe and stable housing; attended religious services in his community; and fostered community connections. (*Id.*)

Now, Petitioner challenges the lawfulness of his civil detention through a Petition for Writ of Habeas Corpus and a Motion for TRO. (ECF Nos. 1, 2). On January 21, 2026, after seeking two extensions of time (ECF Nos. 10, 14), Respondents filed an opposition (ECF No. 17). Petitioner timely replied. (ECF No. 18.) The Court ordered supplemental briefing. (ECF No. 20.) Respondents complied (ECF No. 21) and Petitioner responded (ECF No. 25).[4] On January 27, 2026, the Court held a hearing on this motion and the parties agreed to convert the motion for a TRO into a motion for a preliminary injunction. (ECF No. 26.)

Petitioner alleges that Respondents have violated the Fifth Amendment for his prolonged mandatory detention without due process. (ECF No. 1.) Petitioner seeks immediate release through the instant motion. (ECF No. 2.) Respondents oppose injunctive relief arguing Petitioner's motion was untimely and seeks improper relief. (ECF No. 17.)

II.   **STANDARD OF LAW**

For a preliminary injunction, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the

---

of his intent to appeal, prior to his arrest. (ECF No. 2 at 8.) Since his detention, Petitioner's counsel has filed an asylum application. (*Id.* at 9.)

[4]   Parties also filed their own "supplements." (*See* ECF No. 13, 19, 24.)

hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction. *Id.* at 1134–35.

### III. ANALYSIS

As a threshold matter, the Court begins with Respondents' arguments in opposition that the motion is untimely and improperly seeks coextensive relief with the habeas petition. (*See* ECF No. 17.) Courts across this district, including this one, routinely find that release from immigration custody is appropriate preliminary injunctive relief, upon the requisite showings, to maintain the status quo ante. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy"); *Qazi v. Albarran*, No. 2:25-CV-02791-TLN-CSK, 2025 WL 3033713, at *3 (E.D. Cal. Oct. 10, 2025). "[W]hile it may typically be inappropriate to grant relief via preliminary injunction that constitutes most or all of the final relief sought, there is no mechanism to 'temporarily' halt the deprivation of Petitioner's due process rights while the parties litigate the full merits of Petitioner's habeas petition." *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *3 (E.D. Cal. Mar. 3, 2025). Petitioner contends he is seeking interim protection to prevent further irreparable harm while the habeas petition is adjudicated. (ECF No. 18 at 3.) The Court agrees and, as discussed below, Petitioner has made the requisite showings.

Additionally, the Court does not find that Petitioner unduly delayed in filing a motion requesting injunctive relief. As Petitioner describes and as evidenced by DHS's numerous changes in policy last year, the legal immigration landscape has rapidly changed, and noncitizens, practitioners, and courts are endeavoring to respond to myriad challenges. (*See* ECF No. 18 at 5.) Moreover, Petitioner has worked with his counsel while in custody to seek relief, including most recently requesting a bond hearing, which Respondents denied on December 23, 2025, a mere 21

days prior to filing his motion for TRO. (ECF No. 1-2 at 78–79.) The Court finds Respondents threshold arguments unavailing and declines to deny the motion on those grounds.

Turning to the merits of the motion, the Court considers each of the *Winter* elements.

### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claims that his detention violates the Fifth Amendment Due Process Clause. The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Petitioner claims Respondents violated Fifth Amendment procedural due process and substantive due process.[5] (ECF Nos. 1, 2.) The Court discusses each in turn.

#### i. Procedural Due Process

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

##### a) Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he

---

[5] Petitioner further claims his prolonged detention and Respondents failure to provide him adequate necessities and medical care also violates due process. (ECF No. 2 at 14–15.) Finding relief warranted on the basis of other Fifth Amendment claims, the Court declines to address cumulative claims.

5

government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom when he was paroled into the country in 2021. Under *Morrisey*, this freedom implied a promise that he would not be detained if he abided by the terms of his parole. During his release, Petitioner asserts he complied with the conditions of his parole. (ECF No. 2 at 17.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

At the hearing, Respondents' counsel acknowledged, and did not dispute, Petitioner's liberty interest. However, Respondents argue Petitioner is subject to detention because Petitioner's parole expired.[6] The parties agree Petitioner's parole expired, and it appears to have

---

[6] Respondents also argue Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) ("§ 1225"). This directly contradicts with Petitioner's charging document from DHS that states: "You have been admitted to the United States, but are removable . . ." (ECF No. 1-2 at 2) (emphasis added). Regardless, this Court has repeatedly found that noncitizens residing in the United States are not "applicants for admission" who are "seeking admission" under § 1225. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases in agreement nationwide). Petitioner's parole status and its expiration does not alter this reasoning. *See, e.g.*, *Walizada v. Trump*, No. 2:25-CV-

6

1   expired sometime around February 2024.  (*See* ECF No. 1-2 at 20.)  Despite expiration, Petitioner

2   remained at liberty until his arrest over a year later, pursuing immigration relief, continuing to

3   build community ties, and attempting to renew his parole.[7]  (ECF No. 2 at 17.)

4       Courts routinely find that a noncitizen's liberty interest — as balanced in a due process

5   analysis — is not extinguished by parole expiration.  *Omer G.G. v. Kaiser, et al.*, 2025 WL

6   3254999, *5 (E.D. Cal. 2025); *see also Faqeri, v. Scott, et al.*, No. 2:26-CV-00003-JHC, 2026

7   WL 194475 (W.D. Wash. Jan. 26, 2026) (OAW parole).  "[E]ven when ICE has the initial

8   discretion to detain or release a noncitizen pending removal proceedings, after that individual is

9   released from custody []he has a protected liberty interest in remaining out of custody." *Pinchi*,

10  792 F. Supp. 3d at 1032; *see also Hernandez*, 872 F.3d 976 at 981 ("the government's discretion

11  to incarcerate non-citizens is always constrained by the requirements of due process").

12      Thus, the Court finds Petitioner's liberty interest remained intact.  The Court turns to the

13  procedures that were required to deprive Petitioner of his liberty.

14      *b)*    *Procedures Required*

15      As to the second step — what procedures or process is due — the Court considers three

16  factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

17  erroneous deprivation of such interest through the procedures used, and the probable value, if any,

18  of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

19  the function involved and the fiscal and administrative burdens that the additional or substitute

20  procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

---

00768, 2025 WL 3551972, at *10 (D. Vt. Dec. 11, 2025) (finding OAW expired parolee and asylum applicant was not subject to § 1225); *Mohammadi v. Larose*, No. 3:25-CV-3450-JES-BJW, 2025 WL 3731737, at *2 (S.D. Cal. Dec. 26, 2025).  At the hearing, Respondents argued the instant case is distinguishable because Petitioner's arrest occurred prior to DHS's official policy, which changed the agency's legal position on their interpretation of the INA and mandated detention under § 1225 for a majority of noncitizens.  Nevertheless, the Court fails to see how the temporal aspect of Petitioner's arrest changes the legal rationale, which is the same for both the policy and Petitioner's detention.  The Court, once again, finds that § 1225 does not apply here.  Petitioner's detention is governed by § 1226(a) and he is owed all the procedural trappings.

[7]    Petitioner asserts he did not receive notice of his parole expiration and he does not know why his re-parole was denied.  (ECF No. 1-2 at 35–36.)

1  forth below, the Court finds Petitioner has established his procedural due process rights were
2  likely violated.

3       First, Petitioner has a substantial private interest in remaining free from detention.
4  Petitioner built a life and relationships during his parole. (ECF No. 2 at 8.) He found stable
5  housing and employment and attended religious services in his community. (*Id.*) Despite that,
6  Petitioner has now been detained for ten months without bond or an opportunity to be heard.
7  (ECF No. 2 at 9.) Accordingly, this factor weighs in favor of finding Petitioner's private interest
8  has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD
9  (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

10      Second, the risk of erroneous deprivation is considerable given Petitioner has not received
11 any hearing, either pre- or post-detention. Thus, the Court finds there is a serious likelihood
12 Petitioner could be erroneously deprived of his liberty interest. Without any procedural
13 safeguards to determine whether his detention was justifiable, the probative value of additional
14 procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

15      Finally, the Court considers the government's interest, including the burdens of additional
16 procedures. In opposition to the instant motion, Respondents did not argue that procedural
17 safeguards would be unduly burdensome, but in the factual background of their brief they
18 identified Petitioner as a national security interest.[8] (*See* ECF No. 17.) Indisputably, "no
19 governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453
20 U.S. 280, 307 (1981). It is also well known that the government has a legitimate interest in
21 detaining noncitizens who have been found to be a threat to national security, a danger to the
22 community, or a flight risk. *See Hernandez*, 872 F.3d at 994. Thus, despite the fact Respondents
23 did not argue the issue in opposition, the Court ordered supplemental briefing. (ECF No. 17 at 2.)
24 Specifically, the Court directed Respondents to identify the factual basis for their allegation that

---

[8] Respondents attached a one-page redacted letterhead memo from the FBI identifying Petitioner as the subject of an investigation. (ECF No. 17-2.) Although requested, Respondents have declined to provide any information to this Court or Petitioner about the facts or circumstances underpinning the investigation. The Court gives little weight to the fact of an investigation alone. To find otherwise would mean that the government could unilaterally circumvent due process without any finding of a legitimate interest in detention.

Petitioner is a "public safety threat." (ECF No. 20.)

In response, Respondents provided no credible evidence or facts to support a finding that Petitioner is a threat. Respondents produced a two-page document containing, in relevant part, a one-sentence allegation about activity in Afghanistan from 2015. (ECF No. 21-1.) The date stamp on the document is June 2021, which precedes Petitioner's parole into the country. (*Id.*) That is to say, it appears that this information may have been known to government prior to the time it granted Petitioner entry to the United States.[9] But that is an assumption — the document is unidentified, unauthenticated, unexplained, and out of context — the Court is not even sure what Respondents purport it to be. When the Court asked Respondents about the document and asked why it should be given any weight, counsel responded: "The document, I believe, speaks for itself." Setting aside evidentiary concerns,[10] the document provides only another bare allegation. As set forth above, the parties agree Petitioner has a liberty interest in his continued freedom. The promulgation of an unsubstantiated allegation is not enough to deprive Petitioner of his liberty. Additionally, Petitioner's counsel offered a plausible explanation that this information may derive from, and be explained by, Petitioner's work in counterterrorism, which the government knew about at the time of his parole. (*See* ECF No. 25 at 5.)

The Court will only consider the evidence and factual assertions before it. "Indeed, it is an 'immutable' principle of due process 'that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Zerezghi v. USCIS*, 955 F.3d 802, 813 (9th Cir. 2020) (applying the principle of *Greene v. McElroy*, 360 U.S. 474 (1959) in the immigration adjudication context); *see also Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995)

---

[9] When asked at the hearing, Respondents' counsel could not confirm the date stamp and did not know when the information was known to the government.

[10] The Federal Rules of Evidence do not strictly apply in preliminary injunction proceedings. *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988). Courts have discretion whether to consider inadmissible evidence at this stage, but inadmissibility will bear on the weight of the evidence. *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

1  (holding the "use of undisclosed information in adjudications should be presumptively
2  unconstitutional").

3      Respondents have now had three opportunities (opposition brief, supplemental brief, and a
4  hearing) to provide credible evidence to make a showing that Petitioner is a danger or threat.
5  Their single assertion provides negligible, if any, support for finding that the government's
6  interest should outweigh the most basic procedural safeguards and Petitioner's liberty interest.

7      On the contrary, the undisputed credible evidence in the record weighs in favor of finding
8  that Petitioner is not likely a danger or threat: Petitioner has lived in the United States for
9  approximately four years, during that time he has never been arrested; he has no criminal history;
10 there are no FBI charges against him; and no court has found Petitioner to be a threat or danger to
11 the community.

12     Petitioner asserts his parole in 2021 reflected a determination that he did not pose a flight
13 risk or danger to the community." (ECF No. 2 at 17.) At the hearing, Petitioner's counsel
14 described that parolees from Afghanistan generally undergo security screening outside of the
15 United States before entering; she further described that Petitioner frequently submitted to ICE
16 biometrics.[11] Respondents did not agree that such screening and vetting occurred for Petitioner,
17 but was unable to provide information about the vetting and security checks for the OAW parole
18 program generally or Petitioner specifically.

19     Finally, there is no order of removal for Petitioner. His asylum application is pending.

20     Therefore, on this record, Respondents have not sufficiently shown that they have a
21 legitimate and weighty interest that prevails over Petitioner's liberty interest to strip him of
22 minimal procedural safeguards, like notice and a hearing. Indeed, these are basic protections that
23 are baked into the immigration detention scheme and are also statutorily owed to Petitioner. *See,*
24 *e.g.*, *Mohammadi*, 2025 WL 3731737, at *2 (finding OAW expired parolee was entitled to a bond

---

[11] The Court notes that Petitioner's description of security screening is consistent with DHS's public statements on the OAW program (although the Court makes no finding about the veracity of these public statements). *See Operation Allies Welcome*, Dep't of Homeland Sec., https://www.dhs.gov/archive/operation-allies-welcome (last updated Jan. 22, 2025) (permalink: https://perma.cc/EF5V-KRVR). Courts may sua sponte take judicial notice of government websites and the fact that a statement was made. Fed. R. Evid. 201; *see Daniels–Hall v. Nat. Edu. Assoc.*, 629 F.3d 992, 999 (9th Cir. 2010).

10

hearing under 8 U.S.C. § 1226(a)).

### c) Procedures Provided

Petitioner has not been afforded any due process, neither notice nor hearing, even post-deprivation. Petitioner was arrested without pre-deprivation notice or a warrant. Petitioner was told that he was under arrest for an "immigration violation." (ECF No. 1-2 at 21.) Petitioner was provided a Notice to Appear charging him in removal proceedings. (ECF No. 1-2 at 2–5.) However, at the hearing, Respondents' counsel rebuffed the "immigration violation" as the basis for the arrest and stated that the arrest was conducted due to Petitioner's status as a national security interest. Petitioner has never been provided notice of this claim. Respondents concede that Petitioner has only learned of his national security interest status through these proceedings. To date – ten months into Petitioner's detention – Respondents counsel has refused to provide Petitioner any further information about the purported reason for his detention. Therefore, regardless of whether the arrest reason was pretextual or Respondents now seek to post-hac rationalize, Petitioner has not received full and fair notice of the reasons for his continued detention to permit him to be meaningfully heard.

Respondents have also denied Petitioner a post-deprivation bond hearing. (ECF No. 1-2 at 78–79.) In spite of the fact that the rationale for withholding bond hearings has been invalidated repeatedly by federal district courts. *See, e.g.*, *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713982, at *3 (C.D. Cal. Dec. 18, 2025).

Petitioner was owed the basic due process protections of notice and a hearing. Petitioner has not received any hearing nor has Petitioner received fair notice of Respondents' alleged reasons for arrest. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### ii. Substantive Due Process

The Court turns next to Petitioner's argument that Respondents also violated his substantive due process rights. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. However, "in certain special and narrow nonpunitive

circumstances," nonpunitive government detention does not violate the Clause "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (cleaned up) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). "In the context of civil immigration detention, the two 'regulatory goals' of the Immigration and Nationality Act ["INA"] provisions governing such detention — 'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community' — can provide such 'special justification.'" *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (citing *Zadvydas*, 533 U.S. at 690; *Pinchi*, 792 F. Supp. 3d at 1035. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Id.* (quoting *Hernandez,* 872 F.3d at 990, 994).

As discussed above, Petitioner has credibly shown that he is not a danger to the community, a flight risk, nor a national security threat. Respondents' allegations and submissions are insufficient to rebut Petitioner's showing. The Court further finds persuasive Petitioner's evidentiary submissions of stability and community support to mitigate flight risk. (*See* ECF No. 1-2 at 72–76, 106, 117–123.) In light of the foregoing, the Court finds, at minimum, Petitioner raises serious questions on the merits of his substantive due process claim.

### B.     Irreparable Harm

Petitioner has also established he is suffering irreparable harm in detention and will continue to suffer irreparable harm in the absence of injunctive relief. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here.

While in detention, Petitioner reports delays in medical care, injury, and deteriorating mental health, including exacerbated severe depression and post-traumatic stress disorder. (ECF No. 1-2 at 37.) At the hearing, Petitioner's counsel reported she believed Petitioner may be

12

suffering from suicidal ideation as a result of his prolonged detention. Petitioner also suffers from heart and blood pressure conditions and Petitioner has required hospitalization numerous times while in detention. (ECF No. 18-1.) Further, Petitioner is impeded in his ability to meaningfully participate in the preparation of his asylum claim. (ECF No. 1-2 at 35–36.) Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his asylum application.

Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

### C. Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. The balance of equities tips decidedly in Petitioner's favor as the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Finally, although the government surely has an interest in detaining those who actually pose a legitimate threat to national security (which to be clear has not been shown to be Petitioner), "history and common sense teach us that an unchecked system of detention carries the potential to become a means for oppression and abuse of others who do not present that sort of threat." *Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004). In sum, these last two factors weigh in Petitioner's favor.

D. Relief Warranted[12]

Therefore, the Court GRANTS Petitioner's motion and orders Petitioner's immediate release. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy."). However, given this Court has not yet ruled on the merits and Respondents allege national security concerns — which this Court currently finds dubious — the Court will permit increased monitoring of Petitioner through ICE's Alternatives to Detention program.

## IV. CONCLUSION

Accordingly, the Court issues the following PRELIMINARY INJUNCTION.[13] It is hereby ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2), converted to a preliminary injunction, is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner Seyed H. H. from custody. For the duration of these proceedings, until this Court renders a decision on the merits of the habeas petition, Respondents may restrict Petitioner's release under ICE's Alternatives to Detention program to allow for monitoring.

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a national security threat, danger to the community, or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present. Notice must include the factual basis for Respondents' allegations of

---

[12] Petitioner requested an order requiring Respondents to produce in camera all underlying materials in support of their national security interest claims as well as limited expedited discovery. (ECF No. 25 at 7.) The Court defers ruling on this request at this time.

[13] Respondents also requested a three-day stay on Petitioner's release. The Court DENIES the requested stay, finding no reason to further delay relief for the reasons set forth above.

|   |   |
|---|---|
| 1 | threat, danger, or flight risk such that Petitioner would have a fair opportunity to rebut the |
| 2 | factual assertions at the hearing. |

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner. Respondents shall file responsive papers by **February 27, 2026**. Petitioner may file a reply by **March 27, 2026**. **The parties shall indicate in their briefing whether they request a hearing**. The Court will consider any stipulation and proposed order filed by the parties if they agree to a different briefing schedule.

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

6. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initials.

IT IS SO ORDERED.

Date: January 30, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE